## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARBARA BYRD JOHNSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-00026-N** |
| | ) | |
| **NANCY A. BERRYHILL,** *Acting* | ) | |
| ***Commissioner of Social Security*,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Byrd Johnson brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Upon consideration of the parties' briefs (Docs. 11, 14) and those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

## I.    *Background*

On November 5, 2013, Johnson filed an application for a period of disability and DIB with the Social Security Administration ("SSA"), alleging disability

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

beginning September 30, 2013.[2] After her application was initially denied, Johnson requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. An ALJ hearing was held on August 26, 2015. On September 11, 2015, the ALJ issued an unfavorable decision on Johnson's application, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* R. 9 – 21).

The Commissioner's decision on Johnson's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied Johnson's request for review of the ALJ's decision on November 18, 2016. (R. 1 – 5). Johnson subsequently filed this action under § 405(g) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that

come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679

---

[3] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting

decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB…requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E)…A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*,

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is

responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III. *Analysis*

At Step One, the ALJ determined that Johnson met the applicable insured status requirements through December 31, 2016, and that she had not engaged in substantial gainful activity since the alleged disability onset date, September 30, 2013. (R. 14). At Step Two, the ALJ determined that Johnson had the following severe impairments: bipolar disorder, obsessive compulsive disorder (OCD), and personality disorder. (R. 14). At Step Three, the ALJ found that Johnson did not have an impairment or combination of impairments that met or equaled the

severity of one of the specified impairments in the relevant Listing of Impairments.

(R. 14 – 16).

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Johnson had the RFC "to perform a range of work at all exertional levels[6] but with the following limitations: She can have only

---

6 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 404.1567.

occasional interaction with the public, coworkers, and supervisors. She is to have no production-paced work. She has an unlimited ability to understand, remember, and carry out short and simple instructions but can have no work with detailed instructions." (R. 16 – 20).

Based on this RFC, the ALJ determined that Johnson was unable to perform any past relevant work as a legal assistant. (R. 20). At Step Five, after taking testimony from a vocational expert, the ALJ found that there exist significant numbers of jobs in the national economy that Johnson can perform given her RFC, age, education, and work experience. (R. 20 – 21). Thus, the ALJ found that Johnson was not disabled under the Social Security Act. (R. 21).

### a.    First Claim of Error (Prior ALJ Decision)

Johnson filed a previous DIB application on September 28, 2011, alleging disability beginning June 30, 2010. (*See* R. 51). A different ALJ held a hearing on that application and, in a decision issued March 19, 2013, awarded Johnson a closed period of DIB, finding that she had been disabled from June 30, 2010, through April 16, 2012 (R. 51 – 59) (hereinafter, "the Prior Decision"). The Prior Decision appears to have been part of the administrative record at the time the present ALJ rendered his decision. Johnson argues that the ALJ here reversibly erred in failing to assign weight to, or even mention, the Prior Decision in denying Johnson's November 5, 2013 application, which is the subject of this action. More specifically, Johnson argues the ALJ should have discussed and assigned weight to the Prior Decision's discussion of a report by Dr. Sherman, who conducted a January 12, 2012

consultative examination of Johnson.  Johnson concedes that Dr. Sherman's report "is not in the file" of this case but argues that, since "[t]he Commissioner did not obtain a physical consultative examination in the proceedings on the 2013 application[,]" "Dr. Sherman's consultative examination, conducted on January 12, 2012, is the only consultative physical examination of Mrs. Johnson[,]" and the ALJ here "had an obligation to at least address" the Prior Decision and its discussion of Dr. Sherman's report.  (Doc. 11 at 10 (emphasis added)).

Johnson cites no authority suggesting that the Prior Decision should be considered "evidence" at all, much less that the ALJ's failure to specifically address it constitutes reversible error under sentence four of § 405(g).[7]  On the other hand, in the context of considering the propriety of a "sentence six" remand for consideration of "new and material evidence," the Eleventh Circuit has held that another ALJ's later favorable decision is not even "evidence for purposes of § 405(g)[,]" much less "new and material evidence."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2487 (2016). The *Hunter* panel explained its reasoning as follows:

---

[7] The Commissioner correctly argues that the Prior Decision has no *res judicata* effect on the present ALJ decision.  *See Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009) (per curiam) (unpublished) ("Administrative *res judicata* applies when the agency has made a 'previous determination or decision ... about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision [had] become final by either administrative or judicial action.' 20 C.F.R. § 404.957(c)(1). In 2000, an ALJ determined that based on the facts surrounding that time period, Luckey had been disabled since March 1998. However, in the application at issue, Luckey alleged a disability onset date of 1 July 2002. Because the factual time period for Luckey's current application is different from her previous application, administrative *res judicata* does not apply." (some citations omitted)).

> A decision is not evidence any more than evidence is a decision. Holding, as we do, that a later favorable decision is not evidence for § 405(g) purposes is also supported by the limited scope of judicial review of the ALJ's decision. We must affirm if it is supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.
>
> In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Id.* (citations and quotation omitted). Johnson has given the undersigned no cause to conclude that *Hunter*'s reasoning does not apply here as well.

Moreover, as a general matter, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision…is not a broad rejection which is not enough to enable…this Court to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation omitted). Rather, an ALJ is only required to explain the weight given to "obviously probative exhibits." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (per curiam) (quotation omitted). *Accord Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (per curiam) (unpublished) ("Although the ALJ is not required to

specifically refer to every piece of evidence in the record, *Dyer*, 395 F.3d at 1211, he is required to explain the weight he afforded to 'obviously probative exhibits,' *Cowart*, 662 F.2d at 735 (quotation omitted).").

Dr. Sherman's report was based on a single consultative examination occurring January 12, 2012, and the Prior Decision found that Johnson was disabled only for a period ending April 16, 2012. Johnson's present application alleges disability beginning over a year after the Prior Decision, on September 30, 2013. Moreover, while Johnson emphasizes that the Previous Decision's summary of Dr. Sherman's report was "the only consultative **physical** examination of Mrs. Johnson" (Doc. 11 at 10 (emphasis added)), Johnson's present application claimed disability based only on mental impairments (*see* R. 61, 127, 144). Thus, to the extent they could be considered evidence, Johnson has failed to show how either the Prior Decision or its summary of Dr. Sherman's 2012 report was "obviously probative" of the issue of whether Johnson was disabled on or after September 30, 2013, due to mental impairments, such that reversal and remand is required. *See Phillips*, 357 F.3d at 1238 ("[T]he regulations define RFC as that which an individual is still able to do despite the limitations **caused by his or her impairments**." (emphasis added)).[8] Relatedly, because Johnson was only claiming

---

[8]     Johnson does not argue the rule that an "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" applies to the Prior Decision's discussion of Dr. Sherman's report, *Winschel*, 631 F.3d at 1179, and the undersigned is not convinced that the previous ALJ's summary of Dr. Sherman's report itself qualifies as a "medical opinion" that the ALJ here would have been required to specifically address.

*Luckey v. Astrue*, 331 F. App'x 634 (11th Cir. 2009), which Johnson has cited

disability based on mental impairments, and in light of the fact that the record

contained other medical evidence of Johnson's physical abilities, *see infra*, the ALJ

did not err by failing to obtain a physical consultative examination before denying

her 2013 DIB application. *See Ingram*, 496 F.3d at 1269 ("The administrative law

judge has a duty to develop the record where appropriate but is not required to

order a consultative examination as long as the record contains sufficient evidence

for the administrative law judge to make an informed decision.").

Accordingly, the Court **OVERRULES** Johnson's first claim of error.

### b.    Second Claim of Error (Stress Test Results)

Johnson next argues that the ALJ reversibly erred in failing to assign weight

to the results from an exercise treadmill stress test conducted June 1, 2013, in

which Johnson "exercise[d] for 6 minutes achieving a maximum heart 151 and

exceeded the target heart rate." (*See* R. 220, 235). While conceding that the stress

test and concurrent nuclear imaging "did not indicate a cardiac impairment,"

---

as dealing with a "similar situation," is materially distinguishable. The *Luckey* panel found that the ALJ there reversibly erred because, *inter alia*, it was unclear whether the ALJ had considered records of clinical psychologist Dr. Oatley diagnosing the plaintiff with paranoid personality disorder. 331 F. App'x at 640. Much as the undersigned does here with Dr. Sherman's report, the *Luckey* panel actually noted that it "recognize[d] the force of the argument that the ALJ was not required to consider Oatley's diagnoses because they pertained only to Luckey's previous disability application." *Id.* n.1.  Nevertheless, the panel found that the ALJ should have sufficiently explained his consideration of Dr. Oatley's diagnosis because "Oatley's **medical reports** were part of the record evidence considered by the ALJ." *Id.* (emphasis added. *Luckey* says nothing about consideration of a previous ALJ's finding of fact regarding medical records, and Johnson acknowledges that Dr. Sherman's report itself was not part of the administrative record considered by the ALJ here.  Moreover, Dr. Oatley's records were obviously probative in *Luckey* because the plaintiff there expressly claimed disability based on paranoid personality disorder.

Johnson nevertheless argues that the results are clearly probative because they demonstrate "Johnson's limited exercise capability," which is "clearly inconsistent with the ability to sustain work at the Heavy level of physical exertion." (Doc. 11 at 12 – 13).

The undersigned agrees with the Commissioner that the record does not support Johnson's dire lay reading of the stress test results. Dr. Cave, the physician who performed the stress test, documented "adequate," "unremarkable," and "normal" findings from the test, in particular noting Johnson's "normal tensive response to exercise" with "[n]o symptoms…reported." (R. 235). The ALJ was entitled to defer to Dr. Cave's medical judgment regarding the results of the stress test, and those unremarkable findings are not "clearly inconsistent with" the ALJ's assigned RFC, nor are they "obviously probative" of whether Johnson was disabled on or after September 30, 2013, due to mental impairments. Accordingly, the Court **OVERRULES** Johnson's second claim of error.

### c. Third Claim of Error (Treating Psychiatrist Opinion)

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79

(quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of

treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)). An ALJ's failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Lewis v. Callahan*, 125 F.3d at 1440 (citing *MacGregor*, 786 F.2d at 1053).

Johnson argues that the ALJ's reasons for failing to assign substantial, if not controlling, weight to the medical opinion of Johnson's treating psychiatrist, Dr.

Hammond, are not supported by substantial evidence. The ALJ summarized Dr. Hammond's treatment notes and medical opinions as follows:

> The claimant has a very long history of non-disabling mental health problems. In 2003, she appeared for treatment with Marilyn Hammond, M.D. and reported that she had been in and out of therapy since 1987 and was starting to have suicidal thoughts. In the evaluation performed on October 13, 2003, bipolar disorder was ruled out but she was diagnosed with dysthymia and OCD and assigned a GAF score of 50.[9] She returned to therapy in March of 2011 and bipolar disorder was added as a diagnosis. She has visited quarterly for medication management since. The treatment notes reflect that she has been doing very well with medication at almost all of the visits. No acute symptoms or exacerbation of her conditions have been noted (Exhibit B1F). In May of 2014, the claimant reported that she feels that she is unable to work and that she has been fired three times for poor work performance. Dr. Hammond noted that, "After 15 years of outstanding work as a legal assistant she does not appear to have dementia on evaluation but may have some other cognitive impairment." She then recommended that the claimant have neuropsychological testing done. In October, Dr. Hammond noted that the claimant was doing well and was well groomed. She was pleasant, sleeping well, eating well, with good concentration and coherent thought processes. The claimant reported that she did not follow up with the recommended neuropsychological testing because she could not afford it (Exhibit B4F). At every visit, the claimant had a GAF score of 50 noted. She was noted to be doing very well at almost every visit. She was noted to be coping well with family stressors such as her daughter using drugs having custody issues (Exhibit B9F). In May of 2014 and August of 2015, Dr. Hammond completed forms on the claimant's behalf giving opinions about the claimant's residual functional capacity. On the first form, she indicated that the claimant has moderate to marked deficiencies in concentration, persistence or

[9] In a footnote, the ALJ noted that the "GAF scale was designed by psychiatrists to rate the psychological, social and occupational functioning of an individual patient on a mental health scale of 0-100…A GAF score of 50 equals serious symptoms or any serious impairment." (R. 17 n.1 (citing the *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed., p. 32)).

pace. She indicated that the claimant has moderate restrictions in responding appropriately to coworkers in a work setting. She noted that the claimant reported having been fired three times from jobs due to performance problems and that she should have a neuropsychological evaluation performed. On the later form, she indicated that the claimant has marked limitations in maintaining social functioning and in maintaining concentration, persistence or pace. She indicated that the claimant has had three episodes of decompensation of extended duration and has moderate limitations in understanding, remembering, and carrying out instructions in a work setting. She has moderate restrictions in performing simple and repetitive tasks in a work setting (Exhibits B3F, B8F).

(R. 17 – 18 (footnote omitted)).

The ALJ assigned "[n]o weight…to Dr. Hammond's opinions[,]" explaining as follows:

Although she is a long-term treating physician, her opinions are not consistent with her own treatment notes. The treatment notes reflect no deficits in concentration and the claimant has been doing well with medication and managing stressful situations. She has had no psychiatric hospitalizations and no acute symptoms reported in the twelve years that Dr. Hammond has treated her and no side effects from her medication. The opinion forms are not consistent with one another. Dr. Hammond indicated that the claimant has no difficulty in maintaining social functioning on the first form and indicated she has marked difficulty on the later form. Her ability to understand, remember, and carry out instructions changed from moderate to marked between the two evaluations as well. The treatment notes do not reflect any changes of that nature during that timeframe. On the first form, she noted that the claimant has diagnoses of bipolar disorder, dysthymia and major depression. On the second form, she noted that the claimant has diagnoses of bipolar disorder, dysthymia, and anxiety. There is no evidence on the record of episodes of decompensation of extended duration – Dr. Hammond indicated that she had three episodes of decompensation of extended duration. These discrepancies severely erode Dr. Hammond's credibility.

(R. 18).

The ALJ adequately articulated "good cause" to reject Dr. Hammond's opinions by stating that they were inconsistent with Dr. Hammond's own treatment notes and providing specific examples of those inconsistencies. Johnson's brief identifies no specific discrepancies between Dr. Hammond's records and the ALJ's summary of those records. Having independently reviewed Dr. Hammond's treatment notes and opinions (R. 197 – 209, 237 – 242, 252, 262 – 264 [SSA Exs. B1F, B3F, B4F, B6F, B8F & B9F), the undersigned finds the ALJ's summary reflects a fair consideration of that evidence, and that substantial evidence supports the ALJ's conclusion that Dr. Hammond's treatment notes were not consistent with her opinions.[10]

Johnson attaches much significance to the fact that Dr. Hammond consistently assigned her a GAF score of 50 throughout her treatment notes – indicative on the GAF scale of "serious symptoms or any serious impairment" – and provided "the diagnosis of Bipolar II and Dysthymia" with each GAF score. However, "the mere existence of these impairments does not reveal the extent to which they limit [Johnson's] ability to work[,]" *Moore*, 405 F.3d at 1213 n.6, and

> [t]he Commissioner has concluded…that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings." *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit has observed, GAF scores may be

---

[10] Because the ALJ's conclusion that Dr. Hammond's opinions were inconsistent with her treatment notes provides sufficient "good cause" to reject those opinions, the undersigned need not address whether the ALJ's additional conclusion that the opinions themselves were inconsistent also constituted "good cause" to reject them.

> helpful in formulating a claimant's RFC, but are not essential to the RFC's accuracy, and an ALJ's failure to describe GAF scores does not render the ALJ's RFC assessment inaccurate. *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002). Similarly, the Eighth Circuit has recognized that a GAF score may have little or no bearing on a claimant's social and occupational functioning. *Jones v. Astrue,* 619 F.3d 963, 973 (8th Cir.2010).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015) (per curiam) (unpublished). *See also Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 688 (11th Cir. 2013) ("[T]he Social Security Commission had declined to endorse the use of GAF scores in social security disability programs because they have no direct correlation to the severity requirements of the mental disorders listings. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)."). Thus, contrary to Johnson's assertions, a GAF score of 50 is not necessarily indicative of symptoms "which preclude the individual from maintaining employment" under the Social Security regulations. (Doc. 11 at 14). While Johnson also cites other portions of the treatment notes, much of it Johnson's subjective complaints, that could be viewed as bolstering Dr. Hammond's opinions, this Court "must affirm if the decision reached is supported by substantial evidence[,]" "[e]ven if the evidence preponderates against the Commissioner's factual findings…" *Ingram*, 496 F.3d at 1260 (quotation omitted). *See also Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) ("[F]indings of fact made by administrative agencies…may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of

the administrative findings."). Because the ALJ articulated sufficient "good cause" to reject Dr. Hammond's opinions, and because substantial evidence supports that "good cause," the Court **OVERRULES** Johnson's third claim of error.

### d.    Fourth Claim of Error (Non-examining Physician Opinion)

Johnson next argues that the ALJ reversibly erred in giving "substantial weight" to the opinions of Dr. Veits, a non-examining state agency consultant. It is true that "[t]he opinions of nonexamining, reviewing physicians,…when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam) (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam)). Nevertheless,

> [r]egulations require that an ALJ consider the opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 404.1527(f). The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See id.* § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. 20 C.F.R. § 404.1527(d)(4)…[W]here a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's report. *See Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir.1991).

*Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (per curiam) (unpublished). Notably, "[i]f an ALJ has shown good cause to reject the opinion of a

treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record." *Ethridge v. Berryhill*, No. 1:16CV788-WC, 2017 WL 4780619, at *5 (M.D. Ala. Oct. 23, 2017) (Capel, M.J.) (citing cases). *See also Jarrett*, 422 F. App'x at 874 (holding that ALJ did not err in giving significant weight to opinions of state agency consultants where the ALJ appropriately gave little weight to the treating physician's opinion, no other examining physician opinion contradicted them, and the non-examiner opinions were consistent with the treating physician's notes).

Johnson argues that Dr. Veits's opinion was unreliable because it was based on his review of only a limited range of medical records. More specifically, Johnson points out that, at the time Dr. Veits rendered his opinion on January 10, 2014, Dr. Hammond had not provided either of her opinions, Johnson had not undergone a consultative examination, *see infra*, and the only treatment record from after September 30, 2013, the alleged onset date, that Dr. Veits considered was by a note by Dr. Hammond from November 20, 2013, "the first visit after Mrs. Johnson's employment was terminated." (Doc. 11 at 18). Because, "[a]t the time Dr. Veits reviewed the records of Dr. Hammond, most of the records reflected Mrs. Johnson's employment[,]" Johnson argues "[i]t is not surprising that Dr. Veits' assessment was consistent with the ability to work, in that most of the records from Dr. Hammond were during the time Mrs. Johnson was working." (*Id.*).

However, the ALJ found that Dr. Veits's opinion was "consistent with the claimant's treatment history and the other substantial evidence contained in the

record[,]" though the ALJ also gave Johnson the benefit of the doubt based on "evidence received at the hearing level" and found that Johnson was "slightly…more limited" than Dr. Veits's opinion suggested. (R. 19). The ALJ properly gave no weight to the opinion of treating physician Dr. Hammond, as has been explained above, and Johnson does not dispute the ALJ's finding that Dr. Veits's opinion was largely consistent with the objective medical evidence of record. Accordingly, the ALJ did not err in assigning significant weight to Dr. Veits's opinion, and Johnson's fourth claim of error is **OVERRULED**.

### e. Fifth Claim of Error (Consultative Examiner's Opinion)

Johnson underwent a consultative psychiatric examination with Dr. Starkey on April 14, 2015. In conjunction with this examination, Dr. Starkey provided a medical opinion in the form of a Medical Source Statement of Ability to do Work-Related Activities (Mental). (*See* R. 19). Johnson's final claim of reversible error is that, despite assigning Dr. Starkey's opinion "significant weight," the ALJ's RFC is inconsistent with certain facets of the opinion. Specifically, Johnson argues Dr. Starkey's finding that Johnson "has moderate restrictions in understanding and remembering simple instructions," which the ALJ expressly noted in his decision (R. 19), is inconsistent with the RFC determination that Johnson "has an unlimited ability to understand, remember, and carry out short and simple instructions…" (R. 16). Johnson also argues that the ALJ completely failed to incorporate into the RFC Dr. Starkey's finding that Johnson had "moderate to marked restrictions in responding appropriately to usual work situations and changes in a routine work

setting," despite also expressly noting that facet of the opinion in his decision (*see* R. 19).

The undersigned finds no reversible error in this regard. The ALJ did not indicate that he was assigning Dr. Starkey's opinion "controlling" weight, and, "[a]t least where the opinion is not from a treating source, the Eleventh Circuit imposes no rigid requirement that an ALJ, in crediting a medical opinion, must repeat it word for word in the RFC determination." *Caffey v. Colvin*, No. CV 15-00490-N, 2016 WL 6436564, at *9 (S.D. Ala. Oct. 28, 2016) (citing cases) (footnote omitted). With regard to Dr. Starkey's finding that Johnson had "moderate to marked restrictions in responding appropriately to usual work situations and changes in a routine work setting," the ALJ appears to have adequately taken that finding into account by limiting Johnson to "only occasional interaction with the public, coworkers, and supervisors" and ruling out "production-paced work" (R. 16).

The ALJ also appears to have accounted for Dr. Starkey's finding that Johnson "has moderate restrictions in understanding and remembering simple instructions" by limiting Johnson to instructions that were both "simple" <u>and</u> "<u>short.</u>" Moreover, the ALJ's decision adequately indicates that he did not adopt Dr. Starkey's opinion *in toto* but instead considered it in conjunction with the record as a whole in formulating his RFC, noting that "[m]uch of the opinion was apparently based on [Johnson]'s subjective reports of symptoms" and determining that the "longitudinal medical evidence reveals limitations at the low end of the ranges designed by Dr. Starkey..." (R. 19). The ALJ's decision also noted that Johnson has

"continued to work part-time as a legal assistant scanning documents and transcribing interviews" (R. 19 – 20), which supports the ALJ's determination that Johnson had no restrictions in understanding and remembering short and simple instructions.

Accordingly, the Court **OVERRULES** Johnson's fifth claim of error.  Having overruled all claims of error raised, the Court finds that the Commissioner's final decision denying Johnson benefits is due to be **AFFIRMED**.

## IV.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued November 18, 2016, denying Johnson's application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 9th day of November 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**